UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                        CIVIL ACTION

VERSUS                                          NO. 13-589

AUDUBON CAPITAL SBIC, L.P.                      SECTION "F"

ORDER AND REASONS

Before the Court is the United States' motion for a permanent injunction and the appointment of a receiver.  For the reasons that follow, the motion is GRANTED.

Background

This case arises out of a bank's failure to comply with the requirements of the Small Business Investment Act.

Audubon Capital SBIC, L.P., is a Delaware limited partnership that maintains its principal place of business in Covington, Louisiana.  In February 2000, Audubon was licensed by the Small Business Administration under 15 U.S.C. § 681(c) to operate as a Small Business Investment Company, in accordance with the Small Business Investment Act, 15 U.S.C. § 661, and regulations promulgated thereunder.  The Act was passed for the purpose of making loans available to those engaged in relatively small businesses who cannot otherwise get credit for business loans.  The role of a licensed SBIC is to provide federal funds to those small businesses who qualify under the Act.

The SBA provided more than $14,000,000 in financing to Audubon through the purchase and guarantee of debentures. Consistent with the purposes of the Act, Audubon invested in a series of small business companies; however, complications soon arose.

On August 23, 2012, the SBA notified Audubon of its capital impairment condition and a portfolio diversification ("overline") violation. Under federal regulations, an institution like Audubon is considered to have a capital impairment condition if its capital impairment percentage is greater than 40%. Audubon's capital impairment percentage was 94%, obviously far greater than the 40% allowed by law. The SBA also notified Audubon that it had made an unapproved "overline investment" by investing 33% of its regulatory capital in one of its companies, which is greater than the 30% maximum percentage permitted under federal regulations. Audubon was instructed to cure such violations within fifteen days from the date of the letter, which Audubon failed to do.

Around the same time, on October 31, 2012, the SBA sent another letter to Audubon regarding a $1,250,000 debenture that Audubon had issued on September 4, 2002 and the SBA had guaranteed.[1] The debenture had a maturity date of September 1, 2012, but Audubon failed to repay at maturity. The SBA notified

---

[1] The debenture in question is number 02000760.

Audubon of its default, giving Audubon fifteen days from the date of the letter to cure the violation.  Audubon, again, failed to do so.

The October 31, 2012 letter also stated that the SBA was accelerating all of Audubon's debentures because of Audubon's failure to comply with the SBA's August 23, 2012 letter.  As a result, Audubon had fifteen days from the date of the letter to pay $14,600,000 in principal, plus $658,865.43 in accrued interest, with a per diem rate of $1,884.41.  To date, Audubon has failed to repay the debentures, and there remains $14,600,000 in outstanding debenture leverage, $719,534.25 in accrued interest,[2] and $126,830 in SBA annual leverage fees.  In sum, Audubon owes the SBA $15,446,364.26, and, as a result, Audubon was transferred to the SBA's Office of Liquidation.

On April 1, 2013, the United States on behalf of the SBA sued Audubon in this Court, requesting the Court to (1) permanently enjoin Audubon from further violating the Act and its regulations; (2) take exclusive jurisdiction of Audubon and all of its assets; (3) permanently enjoin Audubon and, among others, its past and present partners, officers, directors, agents, employees, managers, and creditors from encumbering, conveying, disposing, levying, executing, or in any other manner dealing with any of the assets of Audubon; (4) appoint the SBA as

---

[2]  This was the amount of accrued interest as of March 15, 2013.

3

permanent receiver of Audubon; and (5) grant judgment in favor of the SBA and against Audubon in the amount of $15,446,364.26. Reiterating these same requests, the United States applied for a permanent injunction and the appointment of a receiver on May 7, 2013.

On May 21, 2013, Audubon moved to dismiss as premature, or, alternatively, to continue the United States' motion for a permanent injunction and the appointment of a receiver. The Court denied the motion on June 19, 2013, finding that the motion was not premature because Audubon admitted to having engaged in practices that violate the Act, and that a continuance was unwarranted because the Act displaces the ordinary requirements for equitable relief.

The Court now turns to the merits of the United States' motion for a permanent injunction and the appointment of a receiver.

I.   Legal Standards

A SBA license holder agrees to submit itself to all of the terms and conditions prescribed by the Act, including the provisions relating to injunctions and receivers. Section 687c(a) of the Act states:

> ***Whenever, in the judgment of the [SBA], a licensee*** or any other person ***has engaged*** . . . . ***in any acts or practices which constitute*** . . . ***a violation of any provision of this chapter***, or of any rule or regulation under this chapter . . . ***the [SBA] may make application to the***

> ***proper district court of the United States . . . for an order enjoining such acts or practices***, or for an order enforcing compliance with such provision, rule, regulation, or order, and such courts shall have jurisdiction of such actions and, ***upon a showing by the [SBA] that such licensee or other person has engaged or is about to engage in any such acts or practices, a permanent or temporary injunction,*** restraining order, or other order, ***shall be granted without bond.***

15 U.S.C. § 687c(a) (emphasis added).  The Act further provides that in any such proceeding for injunctive relief:

> ***The court*** as a court of equity ***may***, to such extent as it deems necessary, ***take exclusive jurisdiction of the licensee or licensees and the assets thereof, wherever located***; and ***the court shall have jurisdiction in any such proceeding to appoint a trustee or receiver*** to hold or administer under the discretion of the court the assets so possessed.

Id. § 687c(b) (emphasis added).  Finally, the Act states:

> ***The [SBA] shall have authority to act as trustee or receiver*** of the licensee.  Upon request by the [SBA], ***the court may appoint the [SBA]*** to act in such capacity ***unless the court deems such appointment inequitable or otherwise inappropriate by reason of the special circumstances involved.***

Id. § 687c(c) (emphasis added).

## II. Discussion

The United States contends that permanent injunctive relief and the appointment of a receiver is appropriate.  The Court agrees.

### A.

To receive a permanent injunction under Section 687c(a), the United States must show that Audubon has engaged or is about to

engage in "practices which constitute or will constitute a violation of the rules and regulations" issued by the SBA pursuant to the Act.  In its motion, the United States has detailed four specific violations:  (1) failure to cure default on debenture number 02000760, in violation of 13 C.F.R. §§ 107.1810(f)(3), (g)(1)(2); (2) failure to maintain a capital impairment percentage less than 40%, in violation of 13 C.F.R. § 107.1810(f)(5); (3) failure to pay the accelerated indebtedness to the SBA, in violation of 13 C.F.R. §§ 107.1810(f)(3), (g)(1)(2); and (4) a portfolio diversification ("overline") violation, in violation of 13 C.F.R. § 107.740.[3]  Notably, Audubon itself admits to three of the four alleged violations in its answer, contesting only the fourth violation because it claims to have cured the portfolio diversification problem.  The fact that Audubon may have corrected one of the violations, however, is unavailing; courts uniformly agree that "an after-the-fact correction of a regulatory violation does not 'cure' it"

---

[3] After this motion was filed, the United States alleges that Audubon has continued to commit regulatory violations, including the payment of excess management fees in violation of 13 C.F.R. § 104.1810(f)(1), and the selling of an asset to an "associate" without SBA permission in violation of 13 C.F.R. § 107.885.  In total, the United States contends that Audubon currently has six outstanding regulation violations.  Because Audubon admits in its answer to engaging in practices that violate the Act, it is unnecessary to address the additional allegations for purposes of issuing a permanent injunction.  The Court considers the new allegations, however, in determining whether to appoint a receiver.

for purposes of a Section 687c motion.  <u>United States v. Vanguard Inv. Co.</u> (<u>Vanguard II</u>), 694 F. Supp. 1219, 1225 (M.D.N.C. 1988); <u>see also</u> <u>United States v. Trusty Capital, Inc.</u>, No. 06-8170, 2007 WL 44015, at *4 (S.D.N.Y. Jan. 5, 2007); <u>United States v. Coleman Capital Corp.</u>, 295 F. Supp. 1016, 1020 (N.D. Ill. 1969) ("The defendant's interpretation of the statute . . . would permit a licensee to disregard the Act and the regulations with impunity, so long as violations are 'cured' by the time the S.B.A. discovers them.").

 The plain language of the statute provides that "upon a showing by the [SBA] that such licensee or other person has engaged or is about to engage in any such acts or practices, a permanent or temporary injunction, restraining order, or other order, **shall** be granted without bond."  15 U.S.C. § 687c(a) (emphasis added).  Further, courts have expressly held that Section 687c displaces the ordinary requirements for equitable relief, including the showing of irreparable harm, making the only requirement for the issuance of an injunction a showing that the licensee has engaged or is about to engage in practices that violate the Act.  <u>See, e.g.</u>, <u>First La. Inv. Corp. v. United States</u>, 351 F.2d 495, 498 (5th Cir. 1965); <u>United States v. Vanguard Inv. Corp.</u> (<u>Vanguard I</u>), 667 F. Supp. 257, 261 (M.D.N.C. 1987) ("The Court observes that the usual requirements for preliminary equitable relief are supplanted by the specific

mandate of 15 U.S.C. § 687c."), aff'd, 907 F.2d 4369 (4th Cir. 1990); United States v. Novus Ventures II, L.P., No. 12-523, 2012 WL 3257524, at *4 (N.D. Cal. Aug. 8, 2012); Trusty Capital, 2007 WL 44015, at *3; United States v. Marathon Inv. Partners, LP, 399 F. Supp. 2d 1, 3 n.1 (D. Mass. 2005) ("Since the requested equitable relief is expressly prescribed in the statute, it is unnecessary for the SBA to show irreparable injury or to meet the usual standards for equitable relief."). Therefore, because it is undisputed that Audubon has violated the federal rules and regulations issued under the authority of the SBA, the Court finds that the United States has met its burden under the statute and a permanent injunction must be granted.[4]

*B.*

The question now becomes whether the SBA should be appointed receiver of Audubon. Section 687c(c) states that "[t]he [SBA] shall have authority to act as trustee or receiver of the licensee. Upon request by the [SBA], the court **may** appoint the [SBA] to act in such capacity unless the court deems such appointment inequitable or otherwise inappropriate by reason of the special circumstances involved." 15 U.S.C. § 687c(c) (emphasis added). No party genuinely contests that the decision to appoint a receiver is discretionary. See First La. Inv.

---

[4] Audubon appears to concede this point, noting in its opposition papers that "[i]f regulatory violations are found, an injunction should be entered."

Corp., 351 F.2d at 497 (noting that the appointment of a receiver in a Section 687c(c) action is "a discretionary matter"). Instead, Audubon focuses on the statutory language that allows a Court to refuse a receivership if it would be "inequitable or otherwise inappropriate by reason of the special circumstances involved." 15 U.S.C. § 687c(c).

The Fifth Circuit has expressly stated that the appointment of a receiver under Section 687c is "no small measure." See First La. Inv. Corp., 351 F.2d at 497; see also Netsphere, Inc. v. Baron, 703 F.3d 296, 305 (5th Cir. 2012) ("Receivership is an extraordinary remedy that should be employed with the utmost caution . . . ." (internal quotation marks omitted)); Canada Life Assurance Co. v. LaPeter, 563 F.3d 837, 844 (9th Cir. 2009) ("[A]ppointing a receiver is an extraordinary equitable remedy, which should be applied with caution." (internal quotation marks omitted)); Rosen v. Siegel, 106 F.3d 28, 34 (2d Cir. 1997) ("[T]he appointment of a receiver is considered to be an extraordinary remedy, and . . . should be employed cautiously . . . ."). In First Louisiana Investment Corp. v. United States, the leading Fifth Circuit case that addresses Section 687c, the Fifth Circuit upheld the district court's grant of injunctive relief and the appointment of a receiver; however, the Fifth Circuit did not delineate a formula for courts to use in determining whether to appoint a receiver after the SBA has made a showing that it is

9

entitled to injunctive relief.  351 F.2d at 498.  In other contexts, the Fifth Circuit has provided the following factors as relevant for considering a receivership:  "the valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm."  Santibanez v. Weir McMahon & Co., 105 F.3d 234, 241-42 (5th Cir. 1997) (quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316-17 (8th Cir. 1993)).  Other district courts have also considered similar factors in deciding a Section 687c motion.  See Novus Ventures, 2012 WL 3257524, at *6; Trusty Capital, 2007 WL 44015, at *7-8.  "Although these factors must be adjusted to fit the context of SBA receiverships and the mandate of [S]ection 687c to provide some type of relief," one court has soundly observed, "they serve as a useful starting point for evaluation."  Novus Ventures, 2012 WL 3257524, at *8.  No one factor is dispositive, and, in short, the Court has "broad powers and wide discretion to determine the appropriate relief in an equity receivership."  Sec. & Exch. Comm'n v. Safety Fin. Serv., Inc., 674 F.2d 368, 372-73 (5th Cir. 1982) (citation and quotation marks omitted).

The crux of SBA's argument is that Audubon's regulatory violations, on their own, constitute sufficient grounds for appointing SBA as receiver. In addition to the four violations alleged in its complaint, SBA submits that Audubon has also paid excess management fees of $3,164,964.83 in violation of 13 C.F.R. § 104.1810(f)(1), and sold an asset to an "associate" without permission in violation of 13 C.F.R. § 107.885. In response, Audubon asserts that self-liquidation should be permitted in lieu of a receivership because (1) Audubon's managers have a long, successful track record in operating the company, and they are better suited to liquidate Audubon than a receiver who is unfamiliar with the portfolio companies; (2) self-liquidation will yield greater proceeds for the benefit of SBA, taxpayers, and other stakeholders; (3) SBA failed to follow proper internal procedures in developing a liquidation plan; and (4) an SBA receivership would be costly and ineffective, as evidenced by a report by SBA's own Inspector General. In essence, these arguments boil down to a single theme: Audubon's management is more likely to recover proceeds than the SBA.[5]

---

[5] As a threshold matter, the Court notes that Audubon provides, at some length, explanations for why it slipped into regulatory violation. For instance, as to the issue of capital impairment, Audubon asserts that as a result of the recession, two of its companies were in a "precarious financial position," which caused a decline in the value of investments. Further, in trying to protect its investments in one company, Audubon inadvertently exceeded the "overline investment" threshold, in part because of matters occurring in a manager's personal life.

Although Audubon has explained why it believes receivership is not necessary, its arguments do not adequately identify any special circumstances that would render receivership inequitable. Audubon asserts that its managers have been "successful, responsive and compliant with the regulations," as evidenced by ten years of "satisfactory and commendable" examinations, the issuance of a second "green light letter," and numerous compliments by the SBA regarding Audubon's working relationship

---

Audubon contends that "[n]either condition is necessarily terminal or nefarious" and that "[t]he capital impairment, due to the decline in value of two of Audubon's portfolio companies, is not the basis of culpability and does not necessarily require a receivership or liquidation." Simply put, Audubon submits that "[c]apital impairment is not uncommon" and "overline investments are not unusual." The recession-based failures of both companies, according to Audubon, also contributed to Audubon's default on one of its debentures. Audubon emphasizes that it only defaulted on one debenture, and asserts that it was the SBA who accelerated the remaining amount.

Contrary to Audubon's assertions, case law is clear: capital impairment, an overline investment, and default on debentures are all violations of SBA regulations, regardless of the reasons behind such infractions. Further, Audubon conveniently glosses over the fact that its capital impairment condition of 94% was significantly worse than other cases in which the court granted injunctive relief and appointed a receiver, and that the failure to pay one debenture is not an uncommon basis for liquidation or a Section 687c motion. See, e.g., Novus Ventures, 2012 WL 3257524, at *2 (noting that the SBIC had a condition of capital impairment of 80.92%); Trusty Capital, 2007 WL 44015, at *2 (noting that defendant failed to pay a $1,000,000 debenture and that defendant was transferred to liquidation status); Marathon, 399 F. Supp. 2d at 2-3 (stating in the complaint that the SBIC had a condition of capital impairment of 89.90%).

After significant explanation, Audubon wisely recognizes that the regulatory violations "are secondary to the Court's determination of the best specific injunctive relief to order."

with the SBA analyst and the amount of information provided during portfolio review meetings. More importantly, Audubon submits that the "continued viability" of its portfolio companies, and, thus the proceeds they will generate, "hinges greatly" on the continued involvement of managers Richard Cryar and Robert Cowin, because they are "instrumental" to the companies. For example, Audubon points to an affidavit of record by Johnny D. Combs, CEO of Trinity Green Services, LLC, in which Mr. Combs states that Cryar and Cowin have functioned as de facto chief financial officers, providing annual budgeting, cash management and forecasting, monthly variance analyses, and financial modeling. This line of reasoning has been consistently rejected by the courts. (Perhaps in part because most SBICs, to be approved for an SBA license, generally have capable leadership at the helm, and, for obvious reasons, are more familiar with their investment companies than the SBA.)

In <u>United States v. Novus Ventures II, L.P.</u>, the SBIC submitted that its managing directors are "seasoned venture capitalists with specific industry experience and are thus in a better position to liquidate [the SBIC's] portfolio to maximize return." 2012 WL 3257524, at *7. Further, the SBIC argued that its managing directors "also sit on the boards of these companies and actively participate in their management." <u>Id.</u> The court rejected this argument, among others, holding that the SBIC

13

failed to establish special circumstances that demonstrate why a receivership would be inequitable.  Id. at *8.  Similarly, in United States v. Marathon Investment Partners, LP, the court rejected the SBIC's request to self-liquidate, noting that it was the management's failure to honor the SBIC's commitments that led to the receiver request in the first place.  See 399 F. Supp. 2d at 3.  Likewise, the SBIC in United States v. Trusty Capital, Inc. alleged that the court should allow self-liquidation because "appointment of SBA as receiver will result in increased defaults by [the SBIC's] debtors, because it will signal [the SBIC's] weak financial position" and because of the management's "unique relationship" with its clients.  2007 WL 44015, at *8.  The court in Trusty Capital rebuffed defendant's arguments, noting that "[s]uch claims are not new."  Id.  In fact, Audubon fails to cite a single case where the appointment of a receiver was denied.[6]

Audubon also contends that the SBA failed to follow proper internal procedures and that an SBA receivership would be more

---

[6] In Trusty Capital, the court did require that the SBIC president remain engaged in the receivership as a consultant because of the president's ties to the SBIC's Korean-based portfolio companies; however, the court expressly noted that "this is insufficient to justify leaving [d]efendant's assets entirely in his hands" and that "[f]inal decision-making authority will lie with the Receiver."  Id. at *9.  No such foreign-based companies are alleged to be involved here, and Audubon's arguments regarding its managers fail to rise to a level of uniqueness that would justify retaining them as consultants.  More importantly, the SBA was nevertheless appointed to be the receiver in Trusty Capital.  Id.

costly and ineffective than self-liquidation.  In a 2005 report, the SBA Inspector General found that SBA's dissolution procedures have significant shortcomings.  Specifically, the auditor found that the SBA had no measurement of efficiency, cost effectiveness, or timeliness.  The auditor also determined that the SBA "selection process for liquidation methods needed to include cost analysis and consideration of all possible methods," and "better enforcement was needed of the requirement that sales of portfolio assets by the SBIC be commercially reasonable . . . [to avoid] reduced recovery."

    Again, this line of reasoning has been consistently rejected by the courts.  In <u>Trusty Capital</u>, the court noted that "[a]lthough [d]efendant cites an Inspector General's report that is critical of SBA's Office of Liquidation, there is no evidence that SBA is incompetent or cannot be placed in charge of recovering its debts."  2007 WL 44015, at *8.  The court elaborated that "[a]lthough SBA certainly will be less familiar with [d]efendant's current portfolio, that is true whenever a court has to go to the extraordinary means of appointing a receiver."  <u>Id.</u>; <u>see</u> <u>also</u> <u>Novus Ventures</u>, 2012 WL 3257524, at *7-8 (finding the argument that "the SBA has a terrible track record of maximizing the value of the assets of SBICs that it places in receivership" insufficient to constitute special circumstances that would justify denying a receivership).

Further, in this case, the SBA submits a 2010 letter from the Inspector General to the SBA, which states:

> The OIG [Office of the Inspector General] determined that SBA (1) was actively monitoring and timely transferring impaired Small Business Investment Companies (SBICs) to liquidations when warranted and (2) had developed performance goals and indicators to evaluate effectiveness of the liquidation process of SBICs and was reporting annually on whether those goals had been met.

Thomas Morris, Director of the SBA Office of Liquidation, also testified that receiverships vary in cost and expense, because each receivership is "so different in regards to the number of assets, stage of asset, problems and so forth.  So there is not the same typical amount that you can focus on for the cost . . . ."  Costs are monitored by the SBA and, if they seem above average, must be substantiated.

Having considered the relevant case literature, the parties' arguments, and the evidence presented, the Court is not persuaded that appointment of SBA as receiver for Audubon would be "inequitable or otherwise inappropriate by reason of the special circumstances involved."  There is no dispute that: (1) SBA has a valid claim to over $14 million in outstanding debenture leverage; (2) Audubon's capital impairment percentage was 94%, in far excess of the 40% allowed by law; and (3) Audubon has not yet cured this capital impairment.[1]

---

[1] On May 14, 2013, Audubon answered SBA's complaint, admitting that "as of the date of this answer, Audubon has not cured its condition of capital impairment."  Audubon has not stated that this violation has been cured in any of its subsequent

Perhaps even more troubling, and a relevant factor to be considered in weighing a receivership, is SBA's allegations of potentially fraudulent conduct.  In February 2012, Audubon was reporting to the SBA that it was owed $4.496 million in unfunded capital commitments from Audubon Capital Fund, I, L.P., which is Audubon's sole limited partner (referred to by both parties as the "Parent Fund").  The SBA uses the disclosed capital commitment amount when determining whether an SBIC qualifies for self-liquidation under SBA's standard operating procedures, because the disclosed funds should generally be available to pay down the leverage.  When the SBA requested that Audubon "call the capital" from its investors, Audubon refused, noting that the commitment and funding period for the Parent Fund expired in 2007.  Nothing had been done by Audubon or its principals to protect the collectability of the capital commitments (even though Audubon continued to report the $4.496 million as if the funds were available for five years after expiration).  In response, Audubon asserts that "[a]lthough the capital commitments were erroneously reported after their expiration, SBA was just as aware of the expiration" because the "expiration terms were reported as part of Audubon's license application in 1999."

---

submissions to the Court.

In addition, the SBA contends that Audubon committed another regulatory violation in attempting to cure its overline investment problem. In a January 13, 2013 e-mail between counsel for Audubon and the SBA, Audubon notes that it was asked to explain its proposal to cure the overline violation, which was to sell an asset to the Parent Fund. For transactions involving the sale of assets to an "associate," which is defined as any person who owns or controls at least ten percent of the partnership capital of a partnership licensee, written SBA approval is required before the sale can occur. See 13 C.F.R. §§ 107.50, 107.885. Audubon expressly acknowledged in the January 2013 e-mail that SBA did "not consent to the proposal." Despite SBA's disapproval, Audubon proceeded to consummate the transaction on March 26, 2013. In defense of its actions, Audubon "concedes that the cure constitutes a violation only because the SBA refused to [authorize the transaction.]" A recalcitrant argument at best. The SBA alleges that this "cure" of the overline violation conveniently eliminated potential personal liability on the part of Audubon's principals, an allegation that Audubon fails to address in its opposition papers, and one which leaves the Court understandably concerned about possible dishonesty.

    The Court finds that SBA has adequately shown that its request for receivership is reasonable and would not yield an inequitable result, a conclusion supported by the case literature

in which receiverships have been granted for far fewer and less serious regulatory violations. See, e.g., Trusty Capital, 2007 WL 44015, at *2 (granting SBA's motion for a permanent injunction and the appointment of a receiver when the SBIC failed to pay a $1,000,000 debenture, even though the SBIC managed to pay a portion of the amount due); Marathon, 399 F. Supp. 2d at 2-3 (granting SBA's motion when there was only one regulatory violation, a capital impairment condition of 89.90%).

Accordingly, IT IS HEREBY ORDERED that the United States' motion for a permanent injunction and the appointment of a receiver is GRANTED.

New Orleans, Louisiana, August 21, 2013

_____
MARTIN L.C. FELDMAN
UNITED STATES DISTRICT JUDGE